IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JOSE EVANS and VICTORIA EVANS, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> TRINITY INDUSTRIES, INC. AND § <br> TRINITY HIGHWAY PRODUCTS, LLC, § <br> § <br> Defendants. § | Case No. 2:15-cv-00339 |

**DEFENDANTS' MOTION TO TRANSFER VENUE
TO THE NORTHERN DISTRICT OF TEXAS**

Defendants Trinity Industries, Inc. ("Trinity Industries") and Trinity Highway Products, LLC ("Trinity Highway" and, collectively, "Trinity") file this Motion to Transfer Venue to the Northern District of Texas, Dallas Division ("Motion"), and would respectfully show the Court as follows:

**INTRODUCTION**

Trinity moves the Court to transfer this case to the United States District Court for the Northern District of Texas, Dallas Division, under 28 U.S.C. § 1404(a). Transfer is warranted under § 1404(a) and applicable Fifth Circuit authority because the Northern District of Texas is a proper venue for this litigation, and the private and public interest factors provided by the Fifth Circuit weigh in favor of transfer. Specifically, (1) the majority of likely witnesses are located in or near the Northern District of Texas, and there are no witnesses in the Eastern District of Texas; (2) the majority of the potentially relevant documents and other evidence is located primarily in or near the Northern District of Texas; (3) given the location of witnesses and documents, the costs associated with any trial will be substantially less if the case is transferred to the Northern District of Texas; and (4) Plaintiffs Jose and Victoria Evans (collectively,

1

"Plaintiffs") and the purported accident itself appear to have no connection whatsoever to the Eastern District of Texas.

Ultimately, the Eastern District of Texas has no legally-significant ties to this litigation, and the Northern District of Texas has numerous connections to the case. Three of the four private interest factors weigh in favor of transfer, and the fourth factor is neutral. Similarly, one of the four public interest factors weighs in favor of transfer, and the remaining three factors are neutral. Therefore, the case should be transferred to the Northern District of Texas, Dallas Division.

## STATEMENT OF FACTS

Plaintiffs filed this lawsuit on March 6, 2015, alleging negligence and product liability claims against Trinity in connection with an accident in Cape Charles, Virginia purportedly involving an ET Plus. The ET Plus is an end terminal manufactured by Trinity Highway that is placed on the ends of certain roadside guardrails and is designed to absorb and dissipate the energy of a vehicle upon impact, if such impact is within the federal criteria established by the National Cooperative Highway Research Program ("NCHRP") Report 350. (Decl. at ¶ 5, attached hereto as Exhibit A). This case is in its very early stages: no discovery has occurred, there is no scheduling conference currently scheduled, and there are no docket or discovery orders. Moreover, Trinity only recently filed its Answers on March 31, 2015.

**I.      Plaintiffs Lack Any Connection to the Eastern District of Texas.**

Plaintiffs have no connection to the Eastern District of Texas. According to their Complaint, they reside in Winterville, North Carolina, and the purported accident occurred, in Cape Charles, Virginia. (Compl. ¶¶ 1, 7). There are no allegations in the Complaint demonstrating any connection to the Eastern District of Texas other than a description of other, unrelated litigation involving Trinity that occurred in this Court. Plaintiffs do not live or work in

2

the Eastern District of Texas, and the purported accident did not occur in the Eastern District of Texas.

## II.     Trinity Has Significant Connections to the Northern District of Texas.

While neither Plaintiffs nor the alleged accident itself have any connections to the Eastern District of Texas, Trinity does have significant connections with the Northern District of Texas.

Defendant Trinity Industries is a Delaware corporation with its principal place of business in Dallas, Texas. (Decl. at ¶ 3). Trinity Industries is the parent corporation of Trinity Highway. (*Id.*) Trinity Industries does not manufacture, nor sell, the ET Plus. (Decl. at ¶ 5). Because Trinity Industries does not manufacture or sell the ET Plus, it is not a proper party to this litigation.

Defendant Trinity Highway is a Delaware LLC with its principal place of business in Dallas, Texas. (Decl. at ¶ 4). Dallas, Texas is the strategic center of Trinity's business and operations. (Decl. at ¶ 6). It is also the location of key officers, employees, and persons with knowledge concerning the ET Plus and other issues in this litigation. (Decl. at ¶ 7). Overall business decisions, including manufacturing, sales, and marketing decisions relating to the ET Plus are made by Trinity Highway in Dallas, Texas. (Decl. at ¶ 8). As a result, potentially relevant documents relating to the issues in this case, as well as the custodians of such documents, are predominately located in Dallas, Texas. (Decl. at ¶ 9). To the extent hard copy documents concerning the ET-Plus were previously located outside of Dallas, Texas, Trinity Highway has made a concerted effort to collect and transport such documents to Dallas, Texas in connection with other litigation so that the relevant documents are all in one place. (*Id.*)

In stark contrast to its connections with the Northern District of Texas, neither Trinity Industries nor Trinity Highway maintain offices in the Eastern District of Texas. (Decl. at ¶ 10).

...
...

Trinity does not store any potentially relevant documents in the Eastern District of Texas. (Decl. at ¶ 11). Likewise, there are no Trinity employees or other potential witnesses located in the Eastern District of Texas. (Decl. at ¶ 12). The main connection Trinity Highway has to the Eastern District of Texas is that certain products it manufactures—including the ET Plus—are installed along roadways or sold in the district. (Decl. at ¶ 13). However, this connection would exist in countless districts throughout the country because the ET Plus is installed nation-wide. (*Id.*)

## ARGUMENT

I.   **Legal Standard for Transfer of Venue.**

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent the waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). While it is within the trial court's discretion to transfer venue pursuant to § 1404(a), the court must exercise its discretion in light of the particular circumstances of each case. *See In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (granting petition for writ of mandamus after trial court did not transfer venue); *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001). The party seeking transfer of venue must show good cause and that transfer is "clearly more convenient." *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").

When deciding whether to transfer venue, a district court first determines whether the case could have been brought in the transferee district. *Volkswagen II*, 545 F.3d at 312; *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If this threshold issue is

satisfied, the court then balances two categories of interests: private interests and public interests. *Id.*; *see also Radmax*, 720 F.3d at 288 (merging the two categories of interests). Specifically, a court considers the following four private interest factors: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Radmax*, 720 F.3d at 288; *Volkswagen II*, 545 F.3d at 315. Thereafter, the court considers the following four public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign laws." *Id.*

## II.     This Case Could Have Been Brought in the Northern District of Texas.

The first question for this Court is whether this case could have been brought in the Northern District of Texas. *Volkswagen II*, 545 F.3d at 312. Pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2), the Northern District of Texas is a proper venue for this litigation.

Under 28 U.S.C. 1391(b)(1), venue is appropriate in any "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Under 28 U.S.C. § 1391(c)(2), a defendant entity with the capacity to sue or be sued is deemed to reside, "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."

Here, Trinity resides in the Northern District of Texas because the Northern District of Texas may exercise personal jurisdiction over Trinity given its numerous contacts with the district. This conclusion is undeniable given that Trinity's headquarters are located in Dallas, Texas, and numerous operations occur in Dallas, Texas. (Decl. at ¶¶ 6-8). Therefore, venue is

appropriate in the Northern District of Texas and as such this case could have been brought in the Northern District of Texas.

**III.     The Balance of Private Factors Favors Transfer to the Northern District of Texas.**

Because this action could have been brought in the Northern District of Texas, the next question is whether the private and public interest factors weigh in favor of transfer. Beginning with the private interest factors, three out of the four private interest factors weigh in favor of transfer. The fourth factor is neutral. There is no factor that weighs against transfer. Therefore, transfer of this litigation to the Northern District of Texas is necessary under the Fifth Circuit's private interest factors.

        A.     <u>The Relative Ease of Access to Proof Weighs in Favor of Transfer.</u>

First, the relative ease of access to proof in this litigation is significantly better in the Northern District of Texas as compared to the Eastern District of Texas. The question under this initial private interest factor is relative ease of access, and not absolute ease of access. *Radmax*, 720 F.3d at 288; *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.").

The majority of potentially relevant documents and other evidence are located at Trinity's headquarters in Dallas, Texas. (Decl. at ¶ 9). Likewise, the majority of the custodians of those potentially relevant documents are also located in Dallas, Texas. (Decl. at ¶ 7). For example, Trinity Highway's President, Gregg Mitchell, works from Trinity's office in Dallas, Texas. (Decl. at ¶ 7). Moreover, throughout the course of other litigation, Trinity has taken substantial steps to centralize the location of potentially relevant, ET Plus hard copy documents in one location—Dallas, Texas. (Decl. at ¶ 9). Thus, even documents that initially were created or located in other states relating to the issues in this litigation have since been relocated to Dallas,

Texas. (*Id.*) Finally, Trinity retains many documents in an off-site storage facility located in the Northern District of Texas. (*Id.*)

In stark contrast, no documents or any other physical evidence relevant in this litigation are located in Eastern District of Texas. (Decl. at ¶¶ 10-12). One of Plaintiffs' counsel, Josh Maness, may argue that there is relevant evidence concerning the ET Plus in the Eastern District of Texas because he collected such evidence through his representation of a federal relator asserting claims in the Eastern District of Texas. However, the Fifth Circuit is clear that a trial court's consideration of the convenience of counsel under 28 U.S.C. § 1404(a) is reversible error. Volkswagen I, 371 F.3d at 206 ("The word 'counsel' does not appear anywhere in § 1404(a) and the convenience of counsel is not a factor to be assessed in determining whether or not to transfer a case under § 1404(a)."). Thus, such an argument should be rejected by this Court.

Compared with the complete lack of access to proof in the Eastern District of Texas, there is an undeniable, relative ease of access to proof in the Northern District of Texas. As a result, this first factor weighs in favor of transfer.

      B.    <u>The Availability of Compulsory Process to Secure the Attendance of Witnesses Is of Neutral Weight.</u>

The second private interest factor—the availability of compulsory process to secure attendance of witnesses—is neutral as between the Eastern District of Texas and the Northern District of Texas.

Federal Rule of Civil Procedure 45(c) provides that a subpoena may command a person to attend a trial hearing, or deposition at a place within 100 miles of where the person resides, is employed, or regularly transacts business. FED. R. CIV. P. 45(c)(1)(A). The rule also allows a subpoena to command a person to attend a trial, hearing, or deposition within the state where the person resides, is employed, or regularly transacts business if the person is a party or party's

7

officer, or is commanded to attend a trial and would not incur substantial expense. FED. R. CIV. P. 45(c)(1)(B).

Presumably, there may be some witnesses to the accident who reside in Virginia where the accident occurred. However, any location in Virginia is more than 100 miles from both the Northern District of Texas and the Eastern District of Texas. Similarly, Winterville, North Carolina (where Plaintiffs allegedly reside) is also more than 100 miles from either district. So, neither venue would provide compulsory process to secure the attendance of witnesses from Virginia or North Carolina.

Similarly, some non-party witnesses may reside in College Station, Texas at the Texas A&M Transportation Institute. The Texas A&M Transportation Institute is approximately 200 miles from Marshall, Texas, and is approximately 181 miles from Dallas, Texas. As a result, such witnesses reside more than 100 miles from the relevant courthouses in the Northern and Eastern Districts of Texas. While either district could compel attendance under Federal Rule of Civil Procedure 45(c)(1)(B), the relative ease of attendance would weigh in favor of the Northern District of Texas given the decreased mileage (as discussed below in private interest factor four).

Ultimately, given that the same issues for compelling attendance in the Northern District of Texas would also exist in the Eastern District of Texas, this private interest factor is neutral in terms of transfer.

   C. <u>The Cost of Attendance for Willing Witnesses Weighs in Favor of Transfer.</u>

The third private interest factor—the cost of attendance for willing witnesses—weighs substantially in favor of transfer to the Northern District of Texas.

When considering the cost of attendance and convenience of witnesses, the Fifth Circuit has implemented a 100-mile threshold or rule. This 100-mile threshold provides that, "[w]hen

8

the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. The court reasoned, "additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205. Further, the task of scheduling fact witnesses so as to minimize the time when they are away from their regular work or home responsibilities becomes increasingly complicated and difficult when the travel time from a witness's home or work to the court facility is hours away. *See id.*[1] Witnesses not only suffer monetary costs, they also suffer the personal cost of being away from work, family, and community. *Volkswagen II*, 545 F.3d at 317.

Here, the distance between the courthouse in Marshall, Texas and the courthouse in Dallas, Texas is approximately 150 miles. *Id.* Thus, the Fifth Circuit's 100-mile threshold applies. If the litigation were transferred to Dallas, Texas, the travel time and distance for numerous Trinity employees and officers would be significantly less than if the litigation occurred in Marshall, Texas. Applying the Fifth Circuit's reasoning here, a trial in Marshall, Texas would create additional travel time, additional expenses for meals and lodging, and additional time for numerous witnesses to be away from their work, family, and community responsibilities. *Volkswagen I*, 371 F.3d at 204-05; *Volkswagen II*, 545 F.3d at 317 (finding that trip for Dallas-based witnesses to Marshall, Texas resulted "not only [in] monetary costs, but also the personal costs associated with being away from work, family, and community.").

---

[1] The Fifth Circuit later explained that even a transfer *within* 100 miles could also impose costs on witnesses and that such costs should be factored into the transfer analysis. *Radmax*, 720 F.3d at 289.

The cost of attendance for any witnesses from Cape Charles, Virginia—where the accident occurred—would also be lessened if the case were transferred to the Northern District of Texas. While there are no direct, commercial flights from Norfolk, Virginia (45 miles from Cape Charles, Virginia) to Marshall, Texas, there are numerous flights from Norfolk, Virginia to Dallas, Texas with minimal stops. *See* Exhibits B-1 and B-2 (available flights from Norfolk, Virginia to Dallas, Texas or Marshall, Texas). Also, while there are no direct, commercial flights from Greenville, North Carolina (nearby to where Plaintiffs are alleged to reside) to Marshall, Texas, there are numerous flights from Greenville, North Carolina to Dallas, Texas with minimal stops. *See* Exhibits B-3 and B-4 (available flights from Greenville, North Carolina to Dallas, Texas or Marshall, Texas). Thus, while a trial in Marshall, Texas would require Virginia or North Carolina witnesses to fly either into Dallas, Texas or Shreveport, Louisiana and then drive the remaining 100-150 miles, a trial in Dallas, Texas would only require witnesses to fly from Virginia or North Carolina to Dallas, Texas without any additional driving time. *Volkswagen I*, 371 F.3d at 204 n.3 (considering the flights available between San Antonio, Texas and Marshall, Texas in connection with the court's consideration of the cost of attendance and convenience to witnesses).

Finally, the same reasoning applies to any non-party witnesses flying from College Station, Texas to Dallas, Texas. While there are no flights from College Station, Texas to Marshall, Texas, there are numerous flights from College Station, Texas to Dallas, Texas. *See* Exhibits B-5 and B-6 (available flights from College Station, Texas to Dallas, Texas or Marshall, Texas). Accordingly, this factor weighs in favor of transfer.

> D. <u>All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive Weigh in Favor of Transfer.</u>

As to the fourth private interest factor, other practical problems weigh in favor of a transfer to Dallas, Texas to make the trial of the case as easy, expeditious, and inexpensive as possible.

Because a majority of the potentially relevant documents and witnesses are located in Dallas, Texas, a trial in Dallas will prevent unnecessary expenses transporting such documents and travel expenses incurred by witnesses. Further, the travel logistics discussed above for witnesses weighs substantially in favor of a transfer to Dallas. Transferring the case to Dallas allows witnesses to avoid travel altogether for hearings and trial or would only require witnesses to fly directly to Dallas. As explained above, a trial in Marshall, Texas will require all witnesses—Trinity witnesses, Texas A&M Transportation Institute witnesses, witnesses from North Carolina, and Plaintiff herself—to fly either to Dallas, Texas or Shreveport, Louisiana, and then drive the remaining 100-150 miles to Marshall.

Additionally, this case is in the earliest of stages. There has been no discovery and no status conference. Indeed, Trinity only recently answered on March 31, 2015. As a result, there is no prejudice or inefficiency caused by a transfer to the Northern District of Texas at this stage. The Fifth Circuit stated, "the delay associated with transfer may be relevant in ***rare and special circumstances***," but that "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion." *Radmax*, 720 F.3d at 289 (emphasis added). Because this action has not yet required meaningful Court involvement, transfer would not result in a waste of the Court's time or resources.

Given the facts at issue in this litigation and the location of the parties, maintaining the case in Marshall, Texas will only serve to make the logistics of the case more difficult, more

11

inefficient, and more expensive. Once again, the only alleged convenience provided to Plaintiff would be a convenience to one of her counsel which cannot be considered in determining whether to transfer a case under § 1404(a). *Volkswagen I*, 371 F.3d at 206.

### IV. The Balance of Public Factors Favors Transfer to the Northern District of Texas.

The public interest factors also weigh in favor of transfer. Specifically, one of the factors weighs in favor of transfer, and the remaining factors are neutral.

#### A. The Local Interest in Having Localized Interests Decided at Home Weighs In Favor of Transfer.

Given that the Eastern District of Texas has no connection to this litigation, there is similarly no local interest in having any localized interests decided here. Indeed, Plaintiffs' counsel appears to have developed a pattern of filing cases in this Court that have no legally significant connection to the Eastern District of Texas whatsoever. *See, e.g., Washington v. Trinity Industries, Inc., et al.*, Civil Action No. 2:14-cv-01041 (E.D. Tex.); *Mehle v. Trinity Industries, Inc., et al.*, Civil Action No. 2:15-cv-00338 (E.D. Tex.).

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). It is not enough that the citizens of a venue have an interest in a product liability case merely because the product is available in that venue. *Volkswagen II*, 545 F.3d at 318. Indeed, the Fifth Circuit stated that such an argument "stretches logic in a manner that eviscerates the public interest that this factor attempts to capture." *Id.* As this Court has pointedly held, "[t]ransfer is appropriate where none of the operative facts occurred in the division and where the division had no particular local interest in the outcome." *La Day v. City of Lumberton, Tex.*, No. 2:011-CV-237(JRG), 2012 WL 928352, at *3 (E.D. Tex. Mar. 19, 2012) (Gilstrap, J.).

Here, once again, the accident did not occur in the Eastern District of Texas; Plaintiffs do not reside in the Eastern District of Texas; and Trinity's headquarters and plants are not in the Eastern District of Texas. Because there are no connections in this case to the Eastern District of Texas, there is no local interest in having localized interests decided at home and transfer is appropriate. The only potential connection to the Eastern District of Texas is that there are ET Plus systems on roadways located in the district, as there are nationwide. But, as *Volkswagen II* explains, that connection is not enough to preclude transfer. *Volkswagen II*, 545 F.3d at 318.

On the other hand, given the location of Trinity's headquarters, the Northern District of Texas undeniably has a significantly higher local interest in having localized interests decided at home. Therefore, this factor weighs in favor of transfer.

      B.      The Remaining Public Interest Factors are Neutral

The remaining public interest factors are neutral between the Northern District of Texas and the Eastern District of Texas. Both districts are equally capable of efficiently managing and handling another civil litigation in their district and division. Thus, the factor examining the administrative difficulties flowing from court congestion is neutral. The final two factors concern the familiarity of the forum with the law that will govern and the avoidance of unnecessary conflicts of law through the application of foreign law. Here, both the Eastern and Northern Districts of Texas are equally suited to apply either Texas law or North Carolina law to this dispute. Therefore, these factors are neutral in the analysis.

**V.      Plaintiff's Choice of Venue is Given Little Weight When the Chosen Venue Has No Connection to the Litigation.**

Given Plaintiffs' lack of connection to the Eastern District of Texas, she may attempt to argue that her choice of venue should be given weight in this analysis.

However, when the transferor venue has little or no connection to the case, the plaintiff's choice of venue should be given little, if any, weight in the analysis. As explained by the Fifth Circuit, "the avoidance of dismissal through § 1404(a) lessens the weight to be given to the plaintiff's choice of venue." *Volkswagen II*, 545 F.3d at 315. The Fifth Circuit recently explained, "the district court should have been fully aware of the inadvisability of denying transfer where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum." *Radmax*, 720 F.3d at 290. Given that Plaintiffs have no connection to the Eastern District of Texas, and given the good cause Trinity has made in this Motion to transfer the case to the Northern District of Texas, Plaintiffs' choice of venue should not control.

## CONCLUSION

The majority of private and public interest factors weigh in favor of a transfer to the Northern District of Texas. No factors weigh in favor of maintaining this case in the Eastern District of Texas. Therefore, for the foregoing reasons, Trinity respectfully requests that the Court grant its Motion and transfer this case to the Northern District of Texas, Dallas Division.

Respectfully Submitted,

By: /s/ Russell C. Brown
**Russell C. Brown**
State Bar No. 03167510
Russell C. Brown, P.C.
300 West Main Street
P.O. Box 1780
Henderson, Texas 75653
Telephone: (903) 657-8553
Telecopier: (903) 655-0218
Russell@rcbrownlaw.com

J. Mark Mann, Esq.
Texas Bar No. 12926150
Mann Tindel Thompson
300 West Main Street
Henderson, Texas 75652
Telephone: (903) 657-8540
Fax: (903) 657-6003
mark@themannfirm.com

Sarah R. Teachout
Texas Bar No. 24008134
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Ave., Suite 4100
Dallas, Texas 75201-4624
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
steachout@akingump.com

**COUNSEL FOR DEFENDANTS TRINITY INDUSTRIES, INC. AND TRINITY HIGHWAY PRODUCTS, LLC**

## **CERTIFICATE OF CONFERENCE**

      I hereby certify that Trinity has complied with the meet and confer requirement in Local Rule CV-7(h) and that Plaintiff's Counsel is opposed to the relief sought in this Motion.

                                  /s/ Russell C. Brown

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing instrument has been served on counsel for all parties via the Court's CM/ECF system on this 15th day of April, 2015.

                                  /s/ Russell C. Brown
                                  Russell C. Brown