UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



JOSE EVANS & VICTORIA EVANS,

      Plaintiffs,

v.                           CIVIL ACTION NO. 2:15cv314

TRINITY INDUSTRIES, INC. &
TRINITY HIGHWAY PRODUCTS, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on the Defendants'
Motion for Judgment on the Pleadings ("Motion") and Memorandum
in Support thereof, filed on July 31, 2015. ECF Nos. 28, 29. The
Plaintiffs filed their Memorandum in Opposition to the Motion on
September 4, 2015, ECF No. 40, and the Defendants filed a Reply
on September 11, 2015. ECF No. 41. The matter has been fully
briefed and is ripe for review.[1] For the reasons that follow, the
Defendants' Motion is DENIED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs initially filed their Complaint on
March 6, 2015, in the Eastern District of Texas. Compl., ECF

---

[1] On September 23, 2015, the Defendants filed a notice with the
court requesting that the Motion be set for a hearing. ECF
No. 42. The court finds that a hearing is unnecessary, as the
facts and legal arguments are adequately presented, and the
decisional process would not be aided significantly by oral
argument. See Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J).

No. 1. The Defendants subsequently moved to transfer venue to the Northern District of Texas. Mot. to Change Venue, ECF No. 13. On June 23, 2015, the Texas court denied the motion and, instead, transferred the case to the Eastern District of Virginia. Order, ECF No. 20.

Because the matter now comes before this court on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the facts that are alleged in the Complaint are assumed to be true and viewed in the light most favorable to the Plaintiffs.[2] The Plaintiffs have sued the Defendants for personal injuries sustained in an automobile accident, which occurred in Cape Charles, Virginia, on November 23, 2011. Compl. ¶ 7.

The Plaintiffs, a married couple, were injured when their 2003 Nissan Murano veered off the road and collided with an ET-Plus guardrail "impact head" (the "ET-Plus"), which was manufactured by the Defendants. Id. ¶¶ 7, 10. The guardrail rammed through the front driver-side door, puncturing the passenger compartment. Id. ¶ 8. As a result of the accident, Mr. Evans sustained various injuries including a fractured fibula, and Mrs. Evans suffered a chest wall contusion. Id. ¶ 9.

The ET-Plus is intended, upon impact, to extrude the guardrail through the impact head, causing the guardrail to flatten out like a ribbon and deflect away from the colliding

---

[2] See infra Part II.

2

vehicle. In theory, this "allows the energy from the impact to be absorbed and prevent the guardrail from penetrating the vehicle upon impact." Id. ¶ 10. The ET-Plus involved in the Plaintiffs' crash failed to do so in dramatic fashion, as evidenced by the photographs included in the Complaint. Id. ¶ 8.

The Plaintiffs allege that the Federal Highway Administration ("FHWA") originally approved a version of the ET-Plus that functioned correctly to minimize injuries from collisions. Id. ¶ 12. Thereafter, however, different versions of the ET-Plus "started appearing along the National Highway System and on the roads in Virginia." Id. ¶¶ 16-17. One iteration, which appeared sometime between 2000 and 2005, allegedly reduced the exit gap of the impact head from one-and-a-half inches (1.5") to one inch (1"). Id. ¶ 16. A second variation, which appeared in early 2005, allegedly reduced the size of the feeder chute, from five inches (5") to four inches (4"), as well as the overall height of the ET-Plus. Id. ¶ 17. These modifications decreased the amount of space in the impact head's chute for the guardrail to feed through upon impact. Id. ¶ 22.

The Defendants were required to obtain FHWA approval not only before the ET-Plus was initially used on public highways and roads, but also before any changes in the product design could be implemented. Id. ¶ 15. In other words, if the Defendants wanted to alter the ET-Plus design, they had to

3

submit the modified product for additional testing to determine crashworthiness before it could be approved by the FHWA for public use.

The Plaintiffs allege that the Defendants did not seek pre-approval for the ET-Plus impact head modifications that occurred in the early 2000s and in early 2005. Specifically, the Plaintiffs contend that the Defendants petitioned the FHWA twice, in September 2005 and August 2007, to make certain changes to the ET-Plus design, but did not make mention of the earlier alterations to the impact head in either request. Id. ¶¶ 19-20. In fact, the Plaintiffs allege, the Defendants never notified the FHWA, or any other government entity for that matter, of the earlier changes to the ET-Plus. Id. ¶ 21.

Furthermore, the Plaintiffs contend that these design changes, which the Defendants implemented without prior testing and FHWA authorization, were so substantial that the newer, modified ET-Plus no longer functioned as intended. The modifications allegedly cause the guardrail to lock up on impact; then, instead of diverting away from the vehicle and dissipating the force of the collision, the guardrail is forced violently into the vehicle, id. ¶ 23, as allegedly occurred in the 2011 crash involving the Plaintiffs. Id. ¶ 8. The Plaintiffs contend that "literally hundreds of thousands of these unapproved, secretly modified, inherently dangerous ET-Plus

systems have been in use across the country for several years preceding" the Plaintiffs' accident. Id. ¶ 25.

Three years after the accident involving the Plaintiffs, a jury in the Eastern District of Texas rendered a verdict against the Defendants, in a qui tam lawsuit for violations of the federal False Claims Act ("FCA"). Id. ¶ 24. The Plaintiffs allege that the jury in the qui tam suit found the following:

> (1) the Defendants had conducted crash tests in 2005 of the modified ET-Plus system, and the tests had all failed; and, therefore,

> (2) the Defendants "knew of the dangerous conditions created by its unapproved, modified ET-Plus system," which was at that time ubiquitous along the nation's highways and roads; and, thus,

> (3) when the Defendants represented to the FHWA that the ET-Plus was not modified in such a manner, the Defendants "knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim."

Id. ¶¶ 24-25.[3] The verdict of the jury in the qui tam case forms the crux of the Plaintiffs' argument in opposition to the instant Motion.

---

[3] See Jury Verdict, United States ex rel. Harman v. Trinity Indus., Inc., No. 2:12-CV-89 (E.D. Tex. Oct. 20, 2014), ECF

For purposes of the instant Motion, the Defendants argue that the Plaintiffs' claims are time-barred by the applicable statutes of limitations for personal injury, as the Complaint was filed more than two years after the accident involving the ET-Plus. Mem. Supp. at 1. The Defendants, therefore, seek judgment on the pleadings in their favor, pursuant to Federal Rule of Civil Procedure 12(c). The Plaintiffs, however, invoke the doctrine of fraudulent concealment, alleging that the Defendants' fraudulent conduct with respect to the unapproved ET-Plus modifications operated to toll the applicable limitations period until the product's defects were revealed by the verdict in the qui tam trial in 2014. Compl. ¶ 27.

## II. STANDARD OF REVIEW

When analyzing a Rule 12(c) motion for judgment on the pleadings, courts apply the same standard as applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6). See Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014) (citing Butler v. United States, 702 F.3d 749, 752 (4th Cir. 2012)). Thus, to survive a Rule 12(c) motion, the allegations must "advance the plaintiff's

---

No. 570.

claim 'across the line from conceivable to plausible.'" <u>Walters
v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012) (quoting <u>Bell Atl.
Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). Failure to comply
with the statute of limitations is a recognized basis for
dismissal on the pleadings. <u>See Brooks v. City of Winston-Salem</u>,
85 F.3d 178, 181 (4th Cir. 1996) ("A complaint showing that the
statute of limitations has run . . . is the most common
situation in which the affirmative defense appears on the face
of the pleading." (quoting 5A Charles A. Wright & Arthur R.
Miller, <u>Federal Practice & Procedure</u> § 1357, at 352 (1990))).

### III. STATUTE OF LIMITATIONS

Because this case was transferred from the Eastern District
of Texas under 28 U.S.C. § 1404(a), <u>see</u> Order of June 23, 2015,
ECF No. 20, this court, the transferee court, must apply the
choice-of-law rules from Texas, the state of the transferor
court. <u>See Van Dusen v. Barrack</u>, 376 U.S. 612, 639 (1964) ("[I]n
cases . . . where the <u>defendants</u> seek transfer, the transferee
district court must be obligated to apply the state law that
would have been applied if there had been no change of venue."
(emphasis added)); <u>Volvo Constr. Equip. N. Am., Inc. v. CLM
Equip. Co.</u>, 386 F.3d 581, 600 (4th Cir. 2004). Texas has enacted
a "borrowing statute," which requires plaintiffs bringing
personal injury actions in Texas to be timely not only under
Texas law, but also under the law of the place where the

7

wrongful act occurred — in this case, the Commonwealth of Virginia. See Tex. Civ. Prac. & Rem. Code § 71.031(a).

Both Virginia and Texas provide a two-year statute of limitations for personal injury actions. See Va. Code § 8.01-243(A); Tex. Civ. Prac. & Rem. Code § 16.003. Moreover, in both jurisdictions, a cause of action for personal injury accrues at the time the injury is sustained. See Va. Code § 8.01-230; S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996) ("[A] cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."). The Plaintiffs allege they were injured by the Defendants' product on November 23, 2011, Compl. ¶ 7, so unless the statute of limitations was tolled, their claims were time-barred under both Virginia and Texas law after November 23, 2013. Thus, whether judgment on the pleadings is warranted turns on whether the doctrine of fraudulent concealment, as recognized under Virginia and Texas law, tolled the limitations period.

## IV. ANALYSIS

### A. Fraudulent Concealment Under Virginia Law

Both parties focus their briefing on whether the Plaintiffs' claims are barred by the Virginia statute of limitations. Virginia law provides that when a defendant "us[es] any other direct or indirect means to obstruct the filing of an

action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought." Va. Code § 8.01-229(D). The Virginia Supreme Court has held that any plaintiff who seeks to rely upon the tolling provision in this code section "must establish that the defendant undertook an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action." Grimes v. Suzukawa, 262 Va. 330, 332, 551 S.E.2d 644, 646 (2001) (emphasis added). Such affirmative acts must consist of misrepresentations, and "must be of that character which involves moral turpitude, and must [actually] have the effect of debarring or deterring the plaintiff from his action." Newman v. Walker, 270 Va. 291, 296-97, 618 S.E.2d 336, 340 (2005). Mere silence, or passive concealment, is insufficient to toll the limitations period. Id. (citing Culpeper Nat'l Bank v. Tidewater Improvement Co., 119 Va. 73, 83-84, 89 S.E. 118, 121 (1916)).

The Defendants argue that the Plaintiffs cannot invoke section 8.01-229(D) of the Virginia Code to save their claims, as alleged in the Complaint, from being time-barred for two reasons: first, the Defendants' conduct did not amount to "affirmative acts," but were rather mere omissions, which are insufficient to toll the limitations period, see Mem. Supp. at 5-6; and, second, the Defendants did not have the requisite

intent to obstruct these Plaintiffs from bringing claims related to the ET-Plus. See id. at 6.[4]

### 1. Affirmative Acts of Misrepresentation

The Plaintiffs have alleged that the Defendants made modifications to the ET-Plus system without seeking prior FHWA approval, and knew that the modifications altered the ET-Plus in such a way that made the product capable of causing horrific injuries to the motoring public. If the Defendants had merely failed to inform the FHWA of the design modifications and had taken no other action to conceal the alleged defects, such conduct would not likely rise to the level of an affirmative act of misrepresentation. That is because the Virginia courts applying section 8.01-229(D) distinguish passive concealment from the affirmative commission of an act designed to misrepresent. Compare Newman, 270 Va. at 298, 618 S.E.2d at 339-40 (defendant misrepresented his identity by presenting stolen identification and thus did implicate the tolling statute), with Grimes, 262 Va. at 332, 551 S.E.2d at 646 (defendant concealed his identity by wearing a mask during an assault and thus did not implicate the tolling statute).

---

[4] The Defendants do not appear to dispute that knowingly concealing certain defects in a product's design, which are alleged to have caused numerous deaths and grievous injuries, would amount to conduct involving "moral turpitude." See Newman v. Walker, 270 Va. 291, 296-97, 618 S.E.2d 336, 340 (2005).

However, in this case, the Plaintiffs have alleged that the Defendants also petitioned the FHWA twice to obtain approval for modifications to other components of the ET-Plus, but did not include information about the earlier modifications. Compl. ¶¶ 19-20. These petitions were made in September 2005 and August 2007, see id., after the Defendants allegedly conducted the five crash tests of the ET-Plus with the modified impact head. Id. ¶ 24. The Plaintiffs allege that these five crash tests all failed. Id. Thus, the Defendants took the affirmative step of petitioning the FHWA to make certain modifications to the ET-Plus, but — critically — not certain other modifications that the Defendants knew to be dangerous. Stated differently, once the Defendants elected to petition the FHWA to make certain modifications to the ET-Plus, they were required not to mislead the agency by representing that those were the only modifications that had been made. See Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 940 (4th Cir. 1991) (citing W. Page Keeton, et al., Prosser & Keeton on the Law of Torts 737-38 (5th ed. 1984)). Accepting the allegations in the Complaint as true, and giving the Plaintiffs the benefit of all reasonable factual inferences, this scenario constitutes an affirmative act for purposes of Virginia's doctrine of fraudulent concealment.

Plaintiffs bolster their allegations by citing the verdict in the qui tam trial, in particular the finding by the jury that

11

the Defendants "knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim" about the ET-Plus. Compl. ¶ 24. Development of the factual record may be necessary to determine the nature of any false records or statements made by the Defendants, and what evidence was before the jury in the qui tam trial. However, at this early stage of the proceedings, the Plaintiffs' allegations warrant the inference that the Defendants undertook an affirmative act to conceal the Plaintiffs' cause of action, i.e., that the Defendants misrepresented to the FHWA —— and, by extension, the motoring public —— that the ET-Plus was not defective, but rather safe, crash-tested, and approved.

## 2. Intent to Obstruct the Plaintiffs' Claims

Turning to the second vein of the Defendants' argument, the Defendants contend that even if the Plaintiffs have alleged an "affirmative act," they have "failed to demonstrate how this affirmative act was undertaken with the intent to obstruct these Plaintiffs from filing a personal injury action." Reply at 4 (emphasis in original). The Plaintiffs respond that the Defendants' analysis of Virginia case law on fraudulent concealment is "unduly limited," Mem. Opp'n at 2, as "there is no requirement that Defendants actually be aware of [the] [P]laintiff[s'] injuries for fraudulent concealment to apply." Id. at 11.

The parties have cited no case law, and the court is aware of none, in which the courts of the Commonwealth have considered section 8.01-229(D) in the context of a products liability action, in which the alleged concealment occurred prior to the injury in question and was not directly targeted at obstructing the particular plaintiff's claims.[5] However, as the Plaintiffs in this case correctly point out, to interpret the statute to allow only concealment after an injury would essentially prevent plaintiffs in products liability actions from ever asserting the doctrine of fraudulent concealment to toll the statute of limitations. Mem. Opp'n at 11 (citing Klein v. O'Neal, Inc., No. 7:03-CV-102-D, 2008 WL 2152030, at *5 (N.D. Tex. May 22, 2008)). Although Klein is an unpublished decision from a different

---

[5] C.f. Flick v. Wyeth, No. 3:12-cv-12, 2012 WL 4458181 (W.D. Va. June 6, 2012) (federal court in Virginia considered section 8.01-229(D) in the context of a drug products liability case). The plaintiff in Flick sued two drug companies, alleging that their products caused her breast cancer, and invoked section 8.01-229(D) to toll the statute of limitations. Id. at *3. The court held that Virginia's doctrine of fraudulent concealment did not toll the limitations period in this particular case, because, at the summary judgment stage, the evidence showed that the defendants' actions "to increase and sustain sales of their products [did] not equate to affirmatively obstructing" the plaintiff's cause of action. Id. at *4. Importantly, the court further found that the Plaintiff had not made a sufficient proffer of evidence that the drug companies had undertaken affirmative acts of misrepresentation designed to obstruct litigation. Id. at *5. Notably, though, the court did not find that the statute of limitations in the plaintiff's case had run on the grounds that the defendants were not aware of her particular claim or did not intend specifically to obstruct her from filing suit.

jurisdiction, that court's logic is persuasive and applicable here. In some circumstances, a defendant who knows he committed a wrong will necessarily know the identity of the person harmed. Such is the case in Newman, where the defendant driver struck the plaintiff's car, and in Grimes, where the defendant sexually assaulted the plaintiff. But in a products liability suit, when the defendant's product is ubiquitous (whether prescribed to patients, sold in appliance stores, or installed along the nation's highways), "it would be virtually impossible for a defendant to know the identity of each individual who has been harmed," Klein, 2008 WL 2152030, at *4, or will be harmed. No plaintiff in such a case could ever show that the "alleged affirmative action must be intended to obstruct th[e] specific plaintiff from filing her action." Reply at 5 (emphasis added). Thus, under the Defendants' interpretation of section 8.01-229(D), fraudulent concealment could never operate to toll the limitations period in the vast majority of products liability suits. The language of Grimes and Newman is not so restrictive as to mandate this result.

In the present case, the Plaintiffs have alleged that the Defendants acted to conceal from those similarly situated members of the motoring public — including the Plaintiffs — who were injured in car accidents involving the ET-Plus, the facts forming the basis of a claim in products liability.

14

Furthermore, the Plaintiffs have alleged that the Defendants' misrepresentations "prevented the Plaintiffs from suspecting that the injuries and deaths in question did not stem from a defective product," and thus caused the Plaintiffs to delay filing suit. Compl. ¶ 27. Once the factual record is developed through discovery, the evidence might support the inference that the Defendants' affirmative misrepresentations were made with no expectation or knowledge whatsoever of potential harm to motorists, and for some purely legitimate objective, other than obstructing litigation. However, at this early stage in the proceedings, the Plaintiffs have sufficiently pleaded the doctrine of fraudulent concealment under section 8.01-229(D) to toll the Virginia statute of limitations.

### B. Fraudulent Concealment Under Texas Law

Neither the Plaintiffs nor the Defendants thoroughly briefed the issue of whether the fraudulent concealment doctrine, as it exists under Texas law, also tolls the statute of limitations. The Defendants urge the court not to reach the issue. See Mem. Supp. at 4; Reply at 7. However, as the court has determined that the Plaintiffs' claims are timely under Virginia law, it must now address the Texas limitations period.[6]

As in Virginia, Texas state courts also recognize the doctrine of fraudulent concealment to avoid a limitations bar.

---

[6] See supra Part III.

"[W]hen a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, limitations does not begin to run until the claimant, using reasonable diligence, discovered or should have discovered the injury." KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp., 988 S.W.2d 746, 750 (Tex. 1999) (citations omitted). As articulated under Texas law, "[t]he elements of fraudulent concealment are (1) the existence of the underlying tort, (2) the defendant's knowledge of the tort, (3) the defendant's use of deception to conceal the tort, and (4) the plaintiff's reasonable reliance on the deception." Malone v. Sewell, 168 S.W.3d 243, 251 (Tex. Ct. App. 2005) (pet. denied) (citing Mitchell Energy Corp. v. Bartlett, 958 S.W.2d 430, 439 (Tex. Ct. App. 1997) (pet. denied)). Stated generally, "[t]he gist of fraudulent concealment [under Texas law] is the defendant's active suppression of the truth or failure to disclose when the defendant is under a duty to disclose." Mitchell Energy Corp., 958 S.W.2d at 439. Additionally, "[u]nder Texas law, it is sufficient that the defendant knew it has wronged a person or group of persons, regardless whether it has identified the individuals involved." Klein, 2008 WL 2152030, at *5; see also Casey v. Methodist Hosp., 907 S.W.2d 898, 903 (Tex. Ct. App. 1995) (to allege fraudulent concealment, plaintiff must allege "(1) the defendant had actual knowledge of the wrong;

(2) a duty to disclose the wrong; and (3) a fixed purpose to conceal the wrong.").

As the court has already determined, the Plaintiffs have alleged that the modified ET-Plus was defective, and the Defendants knew of the defects and the potential for grievous harm as early as 2005. Moreover, the Plaintiffs have alleged that the Defendants made affirmative misrepresentations to the FHWA to conceal the defect from the agency, as well as the motoring public. As discussed above under Virginia law, it is of no consequence that the Defendants did not intend to obstruct these particular Plaintiffs from bringing their claims. Finally, the Plaintiffs have alleged that they relied on the Defendants' misrepresentations because they "believ[ed] the product was safe and not defective," which "prevented [them] from suspecting" that their injuries did not result from the defects in the modified ET-Plus. Compl. ¶ 27. Thus, the Plaintiffs have also clearly alleged the elements of fraudulent concealment under Texas law.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion for Judgment on the Pleadings, analyzed under the standard applied to Rule 12(b)(6) motions to dismiss,[7] is **DENIED**. The Defendants also filed a Motion for Expedited Consideration of the Motion

---

[7] See supra Part II.

for Judgment on the Pleadings. ECF No. 30. As the court has ruled on the Motion for Judgment on the Pleadings, the Motion for Expedited Consideration is now **MOOT**.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief Judge

REBECCA BEACH SMITH
CHIEF JUDGE

September 29, 2015